UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IRSHAD DANIEL RAHMAN, D/B/A           CIVIL ACTION
RAHMAN INSURANCE, D/B/A
INSURE FOR LESS, AND D/B/A
BUDGET INSURANCE

VERSUS                                No. 22-2052

ALLSTATE INSURANCE                    SECTION: "J"(2)
COMPANY, ET AL.

## ORDER

Before the Court is a *Motion to Remand* **(Rec. Doc. 12)** filed by Plaintiff, Irshad Daniel Rahman, d/b/a Rahman Insurance, d/b/a Insure for Less, and d/b/a Budget Insurance and an opposition (Rec. Doc. 16) filed by Defendant, Allstate Insurance Company ("Allstate"). Having considered the motion and legal memoranda, the record, and the applicable laws, the Court finds that the motion should be denied.

## FACTS AND PROCEDURAL BACKGROUND

This case arises from an alleged breach of contract. Plaintiff alleges that he began working for Allstate in 1990. In June 2000, Plaintiff claims that Allstate converted all of its employees to independent contractors, and Plaintiff signed a contract to become an Exclusive Agent ("EA") with Allstate. On April 1, 2013, Plaintiff alleges that he entered into a revised Allstate R30001S Exclusive Agency Agreement ("the EA Agreement"). As an EA, Plaintiff claims that he was authorized to sell insurance policies on behalf of Allstate in exchange for commission and building a

1

valuable book of business. Plaintiff alleges that the express terms of the EA Agreement establish that EA's have an economic interest in the book of business of Allstate products created by the relationship with Allstate, based on the EA Agreement. The EA Agreement specifies that each EA's economic interest in the book of business for Allstate products includes the right for EA's to sell their economic interest to an approved buyer or to receive a termination payment from Allstate.

Plaintiff claims that on March 25, 2021 Allstate notified him that it was terminating the EA Agreement effective June 30, 2021. Plaintiff alleges that his contract was terminated without just cause, and Allstate improperly transferred Plaintiff's economic interest in his Allstate book of business to local Allstate agent, Tim Buckley. Allstate refused to even consider in good faith, Plaintiff claims, two objectively qualified potential buyers of Plaintiff's book of business.

Plaintiff claims that he also had a non-Allstate book of business which consisted of FAIR and flood policies that he owned. Plaintiff alleges that he was unable to retain his flood book and was forced to sell it for far below market value due to Allstate's actions and misrepresentations. The EA Agreement, Plaintiff claims, permits him to continue to manage and collect commissions on flood policies, even after termination, until the policies come up for renewal. Despite these provisions, Plaintiff alleges that Allstate told him he would not be able to continue to manage his flood policies after termination, and he was forced to sell his flood book for far below market value.

Subsequently, Plaintiff filed suit in the Civil District Court for the Parish of Orleans against Allstate, Brad Heggem, Doug Caminita, and Tim Buckley. Plaintiff, Doug Caminita, and Tim Buckley are all citizens of Louisiana. However, Allstate timely removed the suit to this Court arguing that Caminita and Buckley were improperly joined. Now, Plaintiff seeks to remand the suit back to state court contending that Caminita and Buckley were properly joined.

## LEGAL STANDARD

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a) (2011). "A federal district court has subject matter jurisdiction over a state claim when the amount in controversy is met and there is complete diversity of citizenship between the parties." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing 28 U.S.C. § 1332(a)). The amount in controversy required by § 1332(a) is currently $75,000. *Id.* The court considers the jurisdictional facts that support removal as of the time of removal. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000). Because removal raises significant federalism concerns, any doubt about the propriety of removal must be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

Section 1441(b) specifies that an action otherwise removable solely on the basis of diversity jurisdiction may not be removed if any "properly joined" defendant is a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b)(2). Thus, a properly joined in-state defendant will prevent removal, but an improperly joined in-

3

state defendant will not. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004).

The party seeking removal bears a heavy burden of proving that the joinder of the in-state defendant was improper. *Id.* at 574. The Fifth Circuit has recognized two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party." *Id.* at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). To establish improper joinder where there is no allegation of actual fraud the defendant must demonstrate that there is no possibility of recovery by the plaintiff against any in-state defendant, which, stated differently, means that there is no reasonable basis to predict that the plaintiff might be able to recover against an in-state defendant. *Id.* "A 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Id.* at 573 n.9 (quoting *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 (5th Cir. 2000)).

A court should ordinarily resolve the issue by conducting a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendants. *Id.* at 573. The federal pleading standard governs whether a plaintiff has stated a claim against a nondiverse defendant for purposes of the improper joinder analysis. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, No. 14-20552, 2016 WL 1274030, at *3 (5th Cir. Mar. 31, 2016). Where a plaintiff has stated a claim, but has misstated or omitted discrete and undisputed facts that would preclude recovery, the

Court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood*, 385 F.3d at 573. Because the purpose of the improper joinder inquiry is to determine whether the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case.

## DISCUSSION

Plaintiff argues that individual Defendants Doug Caminita and Tim Buckley are properly joined, and therefore, removal to this Court was improper. (Rec. Doc. 12-1, at 1). Plaintiff asserts the following claims against Caminita and Buckley: conversion, unfair trade practices, fraud, tortious interference with a contract, detrimental reliance, and unjust enrichment. (*Id.* at 4). In opposition, Allstate argues that both Caminita and Buckley are shielded from tort liability for actions taken as Allstate employees. (Rec. Doc. 16, at 9). Under Louisiana law, an individual employee will be liable to a third person if the plaintiff can prove that the employee breached a personal duty to that third person. *See Canter v. Koehring Co.*, 283 So. 2d 716, 721 (La. 1973). In *Canter v. Koehring Co.,* the Louisiana Supreme Court established a test to determine if the non-diverse defendant owes such a duty to the plaintiff. *Id.* A court will find such a duty exists if all elements are met:

> 1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
>
> 2. This duty is delegated by the principal or employer to the defendant.
>
> 3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault.

5

>4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages.

*Id.* (formatting added). "To hold an agent or employee personally liable, the agent or employee's principal or employer must have owed the Plaintiff a duty and delegated that duty to the employee." *Gros v. Warren Properties, Inc.*, No. 12-2184, 2012 WL 5906724, at *7 (E.D. La. Nov. 26, 2012). Here, Allstate contends that Plaintiff fails to allege that Allstate delegated any of their duties to Caminita or Buckley. (Rec. Doc. 16, at 10). The Court will address each claim in turn.

>First, as to the tort of conversion, Plaintiff alleges that
>
>As a result of Allstate's arbitrary and capricious refusal to even consider Mr. Aarian Rahman and/or Ms. Sasha Robertson for the purchase of Plaintiff's book of business, Plaintiff was forced to seek a termination payment from Allstate at far less than the full market value of the economic interest in his Allstate book of business.

(Rec. Doc. 1-1, at ¶ 33). Moreover, Plaintiff claims that "his Allstate book of business was improperly transferred to Tim Buckley." (*Id.* at ¶ 83). In regard to his flood book, Plaintiff alleges that Allstate "and/or Doug Caminita provided incorrect information regarding retaining and/or transferring flood policies post-termination. Plaintiff was unable to retain his flood book and was forced to sell his flood book for far below market value due to Allstate's actions and misrepresentations." (*Id.* at ¶ 42). He claims that Allstate and/or Caminita

>told Plaintiff he would not be able to continue to manage his flood policies after termination and they would be reassigned thirty (30) days after termination. Plaintiff was unable to retain his flood book and was

6

> forced to sell his flood book for far below market value due to the actions and misrepresentations of Allstate and/or Caminita.

(*Id.* at ¶ 45). The Court finds that Plaintiff has failed to allege that Allstate delegated its duties to Caminita or Buckley regarding the sale and transfer of Plaintiff's book of business or flood book. In fact, Plaintiff repeatedly says that Allstate acted arbitrarily and capriciously; Allstate transferred his book of business; and that Allstate told him he could not manage his flood book. The fact that Caminita was the person relaying information to him, does not make Caminita personally liable to Plainitff. Caminita was acting as a Sales Manager for Allstate. Moreover, Plaintiff specifically alleges that Brad Heggem notified Plaintiff that his EA Agreement was being terminated, not Caminita. Next, as to Buckley, the fact that Plaintiff's book of business was allegedly transferred to Buckley does not amount to any authority or decision-making being delegated to Buckley.

> Second, as to the tort of unfair trade practices, Plaintiff alleges that
>
> Allstate Insurance Company and/or Tim Buckley (as a representative of Allstate) encouraged Plaintiff's customers to change agents, falsely stated that Plaintiff was no longer available to service their policies, and/or that Plaintiff was not an active agent, and/or that Plaintiff was no longer in business, and/or that they were required to find a new Allstate agent, and/or that their policy would expire unless a new Allstate agent was retained.

(Rec. Doc. 1-1, at ¶ 49). As an initial note, Caminita is not mentioned in reference to Plaintiff's unfair trade practice claim. As to Buckley, Plaintiff specifically claims that Buckley was acting as a representative of Allstate and fails to allege that Allstate delegated any duty to Buckley,

> Third, as to the tort of fraud, Plaintiff alleges that

7

> Allstate Insurance Company and/or Tim Buckley engaged in intentional fraud and deceit through communications containing misrepresentations or suppressions of the truth and were made with the intent to obtain an unjust advantage over Plaintiff and/or to cause a loss of inconvenience to Plaintiff.

(*Id.* at ¶ 91). There are a plethora of problems with Plaintiff's fraud allegations. Beyond citing only conclusory allegations and legal conclusions that are improper under Rule 8, Plaintiff does not meet the heightened requirement of Rule 9(b). Additionally, Plaintiff fails to allege facts that detail how Allstate delegated any duty to Buckley let alone even mention Caminita in his fraud allegations.

Fourth, as the tort of tortious interference with a contract, this claim cannot be asserted against either Caminta or Buckley because neither are corporate officers. In *9 to 5 Fashions, Inc. v. Spurney*, the Louisiana Supreme Court limited this cause of action to claims asserted against corporate officers. 538 So. 2d 228, 234 (La. 1989). State and federal courts applying the standard articulated in *Spurney* have accordingly dismissed claims asserted against individuals who are not corporate officers, regardless of the level of responsibility or influence they may have in the corporation. *See, e.g., Guidry v. Allstate Fire Casualty Ins. Co.*, No. 18-6660, 2019 WL 1002537, at *7 (E.D. La. Mar. 1, 2019) (finding that Doug Caminita, the same Caminita who is a defendant here, was not a corporate officer of Allstate because his title was Sales Manager); *Mountain States Pipe & Supply Co. v. City of New Roads, Louisiana*, No. 12-2146, 2013 WL 3199724, at *5 (E.D. La. June 21, 2013) (dismissing claim against city's contractor and designated agent for a public works project); *M & D Mineral Consultants LLC v. Wenti Li*, No. 12-2082, 2013 WL 883689, at *3-4 (W.D.

La. Mar. 7, 2013) (dismissing claim against manager of limited liability company); *Spears v. American Legion Hosp.*, 780 So. 2d 493, 496-98 (La. App. 3 Cir. 2001) (dismissing claim against ad hoc committee of the corporation, despite evidence that the committee wielded "a significant amount of power and influence" and pressured the Board of Directors to terminate the plaintiff's contract). Here, Plaintiff alleges that Caminita is Sales Manager and Buckley is an insurance agent. Because Plaintiff does not allege that Caminita and Buckley are corporate officers of Allstate, Plaintiff's claims for tortious inference against them must be dismissed.

Fifth, as to the tort of detrimental reliance, Buckley is not mentioned. As to Caminita, Plaintiff alleges that Caminta told him that "Allstate would extend his contract another ninety (90) days to allow time for Plaintiff to find a buyer." (Rec. Doc. 1-1, at ¶ 29). Additionally, Plaintiff claims that he "was unable to retain his flood book of business or sell it for market value because Allstate, Brad Heggem and/or Doug Caminta did not extend his termination date as was discussed. Plaintiff was forced to sell his flood book for far below market value *due to Allstate's actions and misrepresentations.*" (*Id.* at ¶ 46) (emphasis added). Plaintiff makes no allegation that Allstate delegated any duty to Caminita to make this "promise." This was Allstate's alleged promise to Plaintiff, not Caminita's.

In all of the above claims of conversion, unfair trade practices, fraud, tortious interference with a contract, and detrimental reliance, Plaintiff repeatedly lists the actions that Allstate, Caminita, and Buckley allegedly took as one statement. Plaintiff fails to separate allegations against Allstate, against Caminta in his

9

individual capacity, or against Buckley in his individual capacity. Instead, he continues to lump the three together and makes no attempt to allege that either Caminita or Buckley acted as anything but agents or employees of Allstate.

Lastly, Plaintiff argues that he makes his unjust enrichment claim against Caminita and Buckley in their individual and personal capacities. (Rec. Doc. 12-1, at 11). In opposition, Allstate contends that unjust enrichment is improper because he has other remedies at law available, specifically, a breach of contract claim. (Rec. Doc. 16, at 18). To prove unjust enrichment plaintiff must show "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment or impoverishment, and (5) no other remedy at law." *United Disaster Response, L.L.C. v. Omni Pinnacle, L.L.C.*, 569 F. Supp. 2d 658, 666 (E.D. La. 2008). However, "[w]hen there exists an independent remedy at law, such as a contract . . . unjust enrichment action is not available." *Id.* (citing La. Civ. Code art. 2298; *Morphy, Makofsky & Masson, Inc. v. Canal Place 2000*, 538 So. 2d 569, 575 (La. 1989)).

Plaintiff alleges that "Allstate, Heggem, and Caminita were enriched with income, profits, bonuses, commissions, and costs savings . . . ." (Rec. Doc. 1-1, at ¶ 105). He makes no attempt to separate out the enrichment of Allstate versus Caminita. "Louisiana law provides that no unjust enrichment claim shall lie when the claim is based on a relationship that is controlled by an enforceable contract." *Drs. Bethea, Moustoukas & Weaver, LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 409 (5th Cir. 2004) (citations omitted). Here, the EA Agreement is an enforceable

10

contract that defines the rights and duties of Plaintiff and Allstate. Moreover, Caminita's relationship with Plaintiff is derived from the EA Agreement Plaintiff has with Allstate, and therefore, Plaintiff's claim of unjust enrichment against Caminita is based on a relationship that is controlled by an enforceable contract. Accordingly, Louisiana law bars Plaintiff's unjust enrichment claim as to Caminita.

Next, as to Buckley, Plaintiff generally alleges that "Buckley was enriched with income, profits, bonuses, commissions, and costs savings . . . ." (*Id.*). These are conclusory allegations about Buckley's enrichment which lack facts, let alone well pleaded facts. Moreover, Buckley's alleged enrichment is based on Plaintiff's contractual relationship with Allstate, and therefore, Louisiana law bars Plaintiff's unjust enrichment claim as to Buckley.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion for Remand* **(Rec. Doc. 12)** is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's *Motion for Leave to File Reply* **(Rec. Doc. 18)** is **DENIED as moot.**

New Orleans, Louisiana, this 29th day of August, 2022.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE