UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IRSHAD DANIEL RAHMAN, D/B/A          CIVIL ACTION
RAHMAN INSURANCE, D/B/A
INSURE FOR LESS, AND D/B/A
BUDGET INSURANCE

VERSUS                              No. 22-2052

ALLSTATE INSURANCE                  SECTION: "J"(2)
COMPANY, ET AL.

## ORDER & REASONS

Before the Court are two *Motions to Dismiss.* The first was filed by Defendant,

Allstate Insurance Company ("Allstate") **(Rec. Doc. 15)** in response to Plaintiff's

original complaint. (Rec. Doc. 1) The second was filed by Allstate **(Rec. Doc. 24)** in

response to Plaintiff's First Supplemental and Amended Complaint. (Rec. Doc. 21).

There is also an opposition (Rec. Doc. 30) filed by Plaintiff, Irshad Daniel Rahman,

d/b/a Rahman Insurance, d/b/a Insure for Less, and d/b/a Budget Insurance to which

Allstate has filed a reply. (Rec. Docs. 48).

Having considered the motions and legal memoranda, the record, and the

applicable law, the Court finds that Defendant, Allstate's *Motion to Dismiss* **(Rec.**

**Doc. 24) is GRANTED in part** and **DENIED in part.** The Court further finds that

Allstate's first *Motion to Dismiss* **(Rec. Doc. 15)** is **DENIED as moot.**

## FACTS AND PROCEDURAL BACKGROUND

This case arises from an alleged breach of contract. Plaintiff alleges that he

began working for Allstate in 1990. In June 2000, Plaintiff claims that Allstate

converted all of its employees to independent contractors, and Plaintiff signed a contract to become an Exclusive Agent ("EA") with Allstate. On April 1, 2013, Plaintiff alleges that he entered into a revised Allstate R30001S Exclusive Agency Agreement ("the EA Agreement"). As an EA, Plaintiff claims that he was authorized to sell insurance policies on behalf of Allstate in exchange for commission and building a valuable book of business. Plaintiff alleges that the express terms of the EA Agreement establish that EA's have an economic interest in the book of business of Allstate products created by the relationship with Allstate, based on the EA Agreement. The EA Agreement specifies that each EA's economic interest in the book of business for Allstate products includes the right for EA's to sell their economic interest to an approved buyer or to receive a termination payment from Allstate.

Plaintiff claims that on March 25, 2021 Allstate notified him that it was terminating the EA Agreement effective June 30, 2021. Plaintiff alleges that his contract was terminated without just cause, and Allstate improperly transferred Plaintiff's economic interest in his Allstate book of business to local Allstate agent, Tim Buckley. Allstate refused to even consider in good faith, Plaintiff claims, two objectively qualified potential buyers of Plaintiff's book of business.

Plaintiff claims that he also had a non-Allstate book of business which consisted of FAIR and flood policies that he owned. Plaintiff alleges that he was unable to retain his flood book and was forced to sell it for far below market value due to Allstate's actions and misrepresentations. The EA Agreement, Plaintiff claims, permits him to continue to manage and collect commissions on flood policies, even

after termination, until the policies come up for renewal. Despite these provisions, Plaintiff alleges that Allstate told him he would not be able to continue to manage his flood policies after termination, and he was forced to sell his flood book for far below market value.

Subsequently, Plaintiff filed suit in the Civil District Court for the Parish of Orleans against Allstate, Brad Heggem, Doug Caminita, and Tim Buckley. Plaintiff, Doug Caminita, and Tim Buckley are all citizens of Louisiana. However, Allstate timely removed the suit to this Court arguing that Caminita and Buckley were improperly joined. Plaintiff sought to remand the suit back to state court contending that Caminita and Buckley were properly joined. However, this Court denied Plaintiff's Motion to Remand. (Rec. Doc. 19). This Court found that Plaintiff's claims against Caminita and Buckley for conversion, unfair trade practices, fraud, tortious interference with a contract, and detrimental reliance were all improperly pleaded because he "[made] no attempt to allege that either Caminita or Buckley acted as anything but agents or employees of Allstate." (Rec. Doc. 19, at 10). Further, this Court also held that Louisiana law bars Plaintiff's unjust enrichment claims as to both Caminita and Buckley. Id. at 11.

After this Court's denial of the Motion to Remand (Rec. Doc. 19), Plaintiff filed an Amended Complaint. (Rec. Doc. 21). Plaintiff's Amended Complaint contained additional claims against the non-diverse defendants Doug Caminita and Tim Buckley. Plaintiff also attempted to add an additional non-diverse party: Tim Buckley, Inc., a Louisiana corporation. (Rec. Doc. 21). In response to this Amended

Complaint, Allstate filed a Motion to Strike (Rec. Doc. 33) which Tim Buckley and Tim Buckley Inc. adopted as their own. (Rec. Doc. 35). This Court granted the Motion to Strike as well as a Motion to Dismiss (Rec. Doc. 26) filed by Caminita and Heggem, and dismissed Caminita, Heggem, Buckley, and Tim Buckley, Inc. from this litigation. (Rec. Doc. 52).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

## DISCUSSION

### I.   COUNT 1: BREACHES OF CONTRACT AND WRONGFUL TERMINATION

Plaintiff alleges that Allstate breached its contract with Plaintiff when it (1) wrongfully terminated him; (2) failed to timely make termination payments; (3) encouraged Plaintiff's customers to change agents, among other similar allegations and (4) in bad faith denied the sale of Plaintiff's book of business; (Rec. Doc. 21, at ¶¶ 53–80). First, Allstate contends that Plaintiff has no claim because Allstate did not fail to perform any obligations under the EA Agreement. (Rec. Doc,. 24-3, at 7). As to the sale of his book of business, Allstate asserts that the EA Agreement provides Allstate with the exclusive right to approve or disapprove of any transfer of said book, and therefore no breach occurred when Allstate denied transfer of the book to Plaintiff's selected replacements. *Id.*

"The essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 68 So. 3d 1099, 1108–09 (La. App. 4. Cir. 2011) (citations omitted).

Regarding his alleged unjust termination, Plaintiff alleges in his complaint that "Plaintiff should be able to reasonably expect that under the EA Agreement, Allstate would not terminate his agency for arbitrary and capricious reasons, or for minor infractions that are corrected and that are common under the ordinary course of dealing." (Rec. Doc. 21, at ¶ 72). Specifically, Plaintiff claims that "Allstate knew and accepted Plaintiff's performance output for months and years preceding his

termination. This course of dealing established that Plaintiff had a reasonable expectation that his performance was acceptable to Allstate and permissible under his EA Agreement." (*Id.* at ¶ 73). Plaintiff alleges that "Allstate's termination of Plaintiff's agency for cause was a breach of the EA Agreement because it did so against his reasonable expectations under the contract," and that upon his alleged wrongful termination, Allstate "improperly transferred Plaintiff's economic interest in his Allstate book of business to another agent or agents . . . depriving Plaintiff of his economic interest in his Allstate book of business. (*Id.* at ¶ 74). The EA Agreement states that the Agreement may be terminated "[b]y either party, with or without cause, upon providing ninety (90) days prior written notice to the other . . . ." (Rec. Doc. 24-3, at 7). The Amended Complaint states that on March 25, 2021, Allstate's District Sales Leader notified Plaintiff by letter that the EA Agreement was being terminated effective June 30, 2021. (Rec. Doc. 21, at ¶ 21). This notification, made by written notice and over ninety days before the effective date of termination, is in compliance with the EA Agreement. Thus, Allstate did not breach the EA Agreement when it terminated Plaintiff, and Plaintiff has not sufficiently pleaded his breach of contract claim for unjust termination.

Next, regarding Allstate's alleged failure to timely pay termination payments, Plaintiff alleges that

> The Allstate Manual provides if a book of business is not sold to an approved buyer, 'within 90 days of notice of termination of the R3001 Agreement or such longer period within the Company's discretion) the termination payment will be processed.' As of the filing of the Petition, Plaintiff has not received any termination payments, in direct violation of the Agreement."

(Rec. Doc. 21, at ¶ 77). Allstate does not assert that this portion of Count 1 should be dismissed but instead argues that Plaintiff's allegations are false. (Rec. Doc. 24-3, at 2–3). Allstate asserts that termination payments are paid over a two-year period and that Allstate has timely paid $28,134.38 per month to Plaintiff's lenders because Plaintiff encumbered his economic interest. (*Id.*) Allstate states that it will move for summary judgment in connection with this part of Count 1. *Id.* at 4. Because Plaintiff has sufficiently pleaded his breach of contract claim for failure to timely pay termination payments, the Court will not dismiss this portion of Count 1.

Next, regarding Plaintiff's allegation that Allstate engaged in unacceptable sales practices, Plaintiff alleges

> Upon information and belief, Allstate Insurance Company breached Plaintiff's contract with Allstate by encouraging Plaintiff's customers to change agents, and/or stating to Plaintiff's policyholders that Plaintiff was no longer available to service their policies, and/or that Plaintiff was not an active agent, and/or that Plaintiff was no longer in business, and/or that they were required to find a new Allstate agent, and/or that their policy would expire unless a new Allstate agent was retained, all in direct violation of the Allstate R3001S Exclusive Agency Agreement and fully incorporated Supplement, EA Manual, and Agency Standards, Allstate which prohibits "encouraging customers to change agents" and "verbal or written representation about our competitors that are untrue, deceptive or misleading."

(Rec. Doc. 21, at ¶ 79). Allstate argues that this portion of Count 1 should be dismissed because the portion of the EA Manual to which Plaintiff refers applies to agents of Allstate like Plaintiff rather than to Allstate itself. (Rec. Doc. 24-3, at 9). Furthermore, Allstate argues that Plaintiff does not identify any specific customers who received this encouragement, nor does Plaintiff

identify when and by whom these statements were made. *Id.* Finally and most importantly, Allstate argues that any such statements made by Allstate after the termination of Plaintiff's EA Agreement cannot be used to claim a breach of said contract. *Id.* at 10. Because Plaintiff does not allege that any of these communications took place prior to the termination of Plaintiff's EA Agreement, the Court dismisses this portion of Count 1.

Finally, Plaintiff alleges that Allstate acted in bad faith in denying the sale of his book of business to his chosen purchasers, Mr. Aarian Rahman and Ms. Sasha Robertson. (Rec. Doc. 21, at ¶¶ 65-67). Plaintiff argues that because Allstate "has broad discretion in approving or denying agency sales, its discretion must be exercised with good faith and fair dealing." (Rec. Doc. 30, at 8). Although Plaintiff is correct in stating this requirement, Plaintiff fails to plead any facts showing that Allstate acted in bad faith in refusing sale to Mr. Aarian Rahman. As to Mr. Aarian Rahman, Plaintiff states that Allstate supposedly denied the sale because he did not have the required leadership experience. (Rec. Doc. 21, at ¶ 27). Allstate had broad discretion to approve or disapprove potential buyers, and Plaintiff does no more than allege Allstate disapproved of Mr. Aarian Rahman well within that discretion.

As to Ms. Sasha Robertson, Plaintiff does claim that Caminita told him that Allstate would extend his contract another ninety days in order to allow time for Plaintiff to find a buyer and that Allstate informed Ms. Robertson that she could not buy Plaintiff's book of business because there was not enough time for her to be approved for the sale to go through. *Id.* at ¶ 31. However, Allstate's alleged promise

to extend Plaintiff's time to find an alternate buyer was an extra-contractual promise. Furthermore, in denying sale to Ms. Robertson, Allstate was again merely acting within its broad discretion. Plaintiff cannot successfully make a breach of contract claim on these facts.

Allstate asserts that Plaintiff's argument that Allstate breached the implied covenant of good faith is not supported by Louisiana law. The Louisiana Supreme Court has held that "this general duty of good faith cannot be considered in isolation. Rather, it is necessarily regulated and circumscribed by the obligations imposed by the parties' contract." *Lamar Contractors, Inc. v. Kacco, Inc.*, 189 So. 3d 394, 398 (La. 2016). Furthermore, "stated another way, we do not examine a party's good faith (or bad faith) unless and until we find that the party has failed to perform an obligation, from which the obligee has sustained damages." *Id.* Because Allstate's alleged promise to extend his time to find a new buyer is extra-contractual, Plaintiff cannot make a claim for bad faith as to this promise. Therefore, Count 1 is **DISMISSED**.

## II. COUNT 2: CONVERSION OF PLAINTIFF'S FLOOD BOOK OF BUSINESS

Plaintiff also alleges that Allstate converted his Allstate book of business after his termination and his FAIR plan and flood book when he was forced to sell it for less than fair market value. (Rec. Doc. 21, at 21). Conversion is a cause of action for "any wrongful exercise or assumption of authority over another's goods" in derogation of that person's "possessory rights." *Duhon v. Briley*, 117 So. 3d 253, 261 (La. App. 4 Cir. 2013). Conversion is frequently discussed in connection with movable property or other chattel. *See, e.g., Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853,

857 (La. 1998) (listing seven instances in which an unlawful conversion is committed). Conversion is an intentional tort, but the intent required "is not necessarily that of conscious wrongdoing." *La. State Bar Ass'n v. Hinrichs*, 486 So. 2d 116, 121 (La. 1986). "It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Id.* (noting that "mistake of law or fact is no defense").

To prevail on a conversion claim under Louisiana law, plaintiffs need only prove that (1) they owned or had the right to possess some property; (2) defendants' misuse of the property was inconsistent with plaintiffs' right of ownership; and (3) the misuse constituted a wrongful taking. *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 484 (5th Cir. 1986). Fifth Circuit and Louisiana courts have recognized that money allegedly owed to a plaintiff pursuant to an agreement is a type of property interest that can serve as the basis for a conversion claim. *See, e.g., Chrysler Credit Corp.*, 783 F.2d at 484 (failure to pay plaintiff proceeds from the sale of vehicles owed to plaintiff under the terms of a mortgage agreement could constitute conversion); *La. Health Care Grp., Inc. v. Allegiance Health Mgmt., Inc.*, 32 So. 3d 1138, 1142-43 (La. App. 3 Cir. 2010) (failure to surrender funds owed to plaintiff under the terms of a contract could constitute conversion).

Plaintiff contends that his flood book of business was converted when Allstate "provided incorrect information regarding retaining and/or transferring flood policies post-termination. Plaintiff was unable to retain his flood book and was forced to sell his flood book for far below market value due to Allstate's actions and

misrepresentations." (Rec. Doc. 21, at ¶ 42). Plaintiff further alleges that Allstate told him that he "would not be able to continue to manage his flood policies after termination, and that they would be reassigned thirty (30) days after termination" *Id.*, at ¶ 45. Plaintiff asserts that "a portion of Plaintiff's FAIR plan book of business may have been obtained by Tim Buckley and/or other Louisiana Allstate Agents without legal right and/or through deceptive means, without any compensation being paid to Plaintiff" *Id.*, at ¶ 47. Defendant, Allstate argues that Plaintiff's interests in his flood book of business could not be converted because Plaintiff admits that he sold his flood book to a buyer, albeit for below fair market value. (Rec. Doc. 24-3, at 11).

Plaintiff does not claim that Allstate actually took or exercised dominion over his flood policies, an essential element of a claim for conversion. The Louisiana Supreme Court in *Dual Drilling Co.* explained that the tort of conversion

> . . . is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel.

721 So. 2d at 857. The Louisiana Supreme Court also held in that case that a defendant could not have converted drilling equipment when it was never "in Southern's possession or sold to Southern and disposed of by it at a subsequent time." *Id.* at 858. Likewise, Plaintiff in this case never alleges that Allstate actually took his flood book. Plaintiff does assert that he was forced to sell his flood policies for far below market value because he was told by Allstate that he "would not be able to continue to manage his flood policies after termination and they would be

11

reassigned. . ." This allegation does support Plaintiff's claim that Allstate engaged in plausibly unfair and fraudulent business practices in regard to the flood book of business. However, this allegation cannot support a claim that Allstate converted these policies as Plaintiff never actually alleges that there was a taking.

To support his contention that his flood book was converted, Plaintiff relies upon the case of *Guidry v. Allstate Fire Casualty Insurance Company*. No. 18-6660, 2019 WL 1002537 (E.D. La., March 1, 2019). In that case, the court found that the plaintiffs, Guidry and his Agency, adequately pleaded a claim for conversion when they alleged that the EA Agreement afforded him the option to sell his interest in any flood policies or to retain them as policies he owns. Guidry opted to retain his flood policies and expected to continue to receive the commission due under those policies as Allstate promised in his termination letter. *Guidry*, 2019 WL 1002537, at *7. Nonetheless, Guidry alleged that the defendants transferred the flood policies that he intended to retain to other Allstate agents, and he never received any commission. *Id.* Guidry claimed that he and his Agency had a possessory right to the commission due under the flood insurance policies. The court agreed that the plaintiff had property rights in the flood insurance policy, and thus the commissions due. *Id.*

However, the case at hand is distinguishable from *Guidry* for several reasons. First, in *Guidry,* the plaintiff alleged that his flood policies were actually transferred away from him without proper compensation, while Plaintiff in this case sold his flood policies. Second, the plaintiff in *Guidry* also claimed that his commissions on those flood policies had been wrongfully retained by Allstate, while Plaintiff in this case

makes no such claim in regard to commissions on his flood book. Therefore, Plaintiff has failed to state a claim upon which relief can be granted that Allstate converted his flood book of business.

As to Plaintiff's Allstate book of business, this Court finds that Plaintiff has also failed to state a claim for conversion. Plaintiff does not dispute that he never owned his Allstate book of business. Allstate was entitled under the EA Agreement to terminate their relationship at any time and retained nearly unfettered discretion as to whether Plaintiff could sell his economic interest in the policies or whether he would instead have to accept a termination payment as compensation. Allstate chose the latter option. Although the parties dispute whether this payment has actually been received and whether it was proper to pay Plaintiff's creditors rather than Plaintiff himself, neither dispute that the termination payment is owed as compensation for the Allstate book of business. Therefore, Plaintiff has also failed to plead conversion as to the Allstate book of business, and Count 2 shall be **DISMISSED**.

### III.   COUNT 3: UNFAIR TRADE

The Louisiana Unfair Trade Practices Act ("LUTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A). It affords a private right of action to "[a]ny person who suffers any ascertainable loss" as a result of the unlawful conduct. § 51:1409(A). "To recover, the plaintiff must prove some element of fraud, misrepresentation, deception or other unethical conduct." *IberiaBank v. Broussard*,

907 F.3d 826, 839 (5th Cir. 2018) (internal quotation marks and citations omitted). A practice is unfair under LUTPA only when "the practice offends established public policy and is immoral, unethical, oppressive or unscrupulous." *Id.* (internal quotations omitted); *see also Monroe v. McDaniel*, 207 So.3d 1172, 1180 (La. App. 5 Cir. 2016) ("[T]he range of prohibited practices under LUTPA is extremely narrow and includes 'only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct.'" (quoting Ch*eramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1060 (La. 2010))). "What constitutes an unfair trade practice is determined by the courts on a case-by-case basis." *IberiaBank*, 907 F.3d at 839.

Allstate argues that LUTPA claims are held to the heightened pleading requirements for misrepresentation or fraud claims pursuant to Federal Rule of Civil Procedure 9(b). Plaintiff disputes that LUTPA claims must be evaluated under this heightened standard. (Rec. Doc. 30, at 12). Defendants cite *Pinero v. Jackson Hewitt Tax Serv. Inc.*, in which the court found that because the plaintiff's LUTPA claim was "based on defendants' allegedly fraudulent misrepresentation, plaintiff's LUTPA claim must meet the heightened pleading requirements of Rule 9(b)." 594 F. Supp. 2d 710, 721 (E.D. La. 2009). Plaintiff points to *Mabile v. BP, P.L.C.*, No. 11-1783, 2016 WL 5231839, at *25 (E.D. La. Sep. 22, 2016) in which a different section of this Court held that a LUTPA claim was not required to meet the heightened pleading standard of Rule 9(b) when the plaintiff did not "explicitly [allege] fraud or fraudulent conduct in his amended complaint as a basis for his LUTPA claim." However, the case at hand

is far more similar to *Pinero* than to *Mobile*. Although Plaintiff does not specifically use the word "fraud" in relation to his LUTPA claim, Plaintiff makes a fraud claim in Count 4 on the exact same facts as his LUTPA claim, and these two claims are not made in the alternative. (Rec. Doc. 21, at ¶49). This Court cannot conclude that Plaintiff's LUTPA claim does not raise the issue of fraud. Therefore, Plaintiff's LUTPA claim must meet the heightened pleading standard of Rule 9(b).

Rule 9(b) requires that plaintiffs plead fraudulent behavior with heightened specificity. Fed. R. Civ. P. 9. The Fifth Circuit has held this to mean that Rule 9(b) requires the complaint "specify the statements contented to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (internal quotations and citation omitted). As to the flood book, Plaintiff has met these requirements.

Plaintiff alleges in his Complaint that immediately after his termination Allstate

> Issued written communications to Plaintiff's customers encouraging them to change agents. These communications falsely stated that Plaintiff was no longer available to service their policies, and/or that Plaintiff was not an active agent, and/or that Plaintiff was no longer in business, and/or that they were required to find a new Allstate agent, and/or that their policy would expire unless a new Allstate agent was retained.

(Rec. Doc. 21, at ¶ 49). Although these claims are not overly specific or detailed, they are bolstered by Plaintiff's allegation that Allstate, through its representative Doug Caminita, told him that he "would not be able to continue to manage his flood

policies after termination, and that they would be reassigned thirty (30) days after termination" *Id.*, at ¶ 45. Although Plaintiff asserts this as part of his conversion claim, the Court finds that this allegation is another specific instance of a misrepresentation made by Allstate which serves to satisfy the heightened pleading requirement of Rule 9(b).

Therefore, as to the flood book of business, Plaintiff has successfully pleaded a LUTPA claim with enough specificity to survive a 12(b)(6) motion to dismiss. Plaintiff successfully identifies an actor: Allstate acting through Doug Caminita. He also specifically alleges the format and content of the alleged misrepresentations: the allegedly false written communications sent to customers regarding Plaintiff's inability to service their policies and the statements made to Plaintiff about the transference of his flood book. Plaintiff's allegations in regards to when these communications took place are less specific: he claims only that they took place "immediately after his termination." (Rec. Doc. 21, at ¶ 49). Plaintiff also does not allege where these communications occurred. However, the Court finds that this factual deficiency alone is not enough to warrant a dismissal of the flood book LUTPA claim at this stage. Allstate admits that Plaintiff retained ownership of his FAIR plan and flood policies even after his termination and had the right to either sell or keep these policies. (Rec. Doc. 24-3, at 11). If Allstate informed Plaintiff's customers that he was no longer able to service any of their policies—including their flood policies— then these statements would be false. Furthermore, if Allstate told Plaintiff that his flood policies would also be transferred after his termination, this too would

constitute a falsehood. Therefore, the Court finds that Plaintiff has successfully pleaded a LUTPA claim as concerns his flood book of business.

However, as to Plaintiff's LUTPA claims regarding his Allstate book of business, Plaintiff has failed to successfully bring a claim. Unlike with Plaintiff's flood book, Plaintiff's claims regarding his Allstate book of business are governed by contract with Allstate, and LUPTA does not provide an alternative remedy to breach of contract claims. *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1060 (La. 2010) (quoting *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993)). Plaintiff claims that "[p]ursuant to the Allstate R3001S Exclusive Agency and fully incorporated Supplement, EA Manual, and Agency Standards, Allstate prohibits 'encouraging customers to change agents' and 'verbal or written representation about our competitors that are untrue, deceptive or misleading.'" (*Id.* at ¶ 48). Because the Supplement, EA Manual, and the Agency Standards are expressly incorporated and integrated as part of the EA Agreement between the parties, the Court finds that Plaintiff's LUTPA claim is derivative of his breach of contract claim. Plaintiff alleges that Allstate violated the portions of EA Agreement and the incorporated documents listed above, by engaging in the above quoted actions. These alleged actions are not sufficiently egregious to state a claim under LUTPA because the statute "does not provide an alternate remedy for simple breaches of contract." *Cheramie Servs., Inc.*, 35 So. 3d at 1060. Therefore, Count 3 is **DISMISSED in part** as to Plaintiff's claims related to his Allstate book of business.

#### IV. COUNT 4: FRAUD

Plaintiff alleges that Allstate "engaged in intentional fraud and deceit through communications containing misrepresentations or suppressions of the truth and were made with the intent to obtain an unjust advantage over Plaintiff and/or cause a loss or inconvenience to Plaintiff." (Rec. Doc. 21, at ¶ 91). Plaintiff's fraud claim is predicated on the same set of facts as his LUTPA claim. (Rec. Doc. 21, ¶ 49). Because Plaintiff has claimed fraud, his claims are held to the heightened pleading standard of Rule 9(b). As to his Allstate book of business, Plaintiff fails to successfully make a claim for fraud. After all, Plaintiff's EA agreement had been terminated, and therefore, a communication on Allstate's part that Plaintiff was no longer an active agent and could no longer service clients' Allstate policies was not false or fraudulent. Therefore, as to Plaintiff's claims regarding his Allstate book of business, Count 4 is **DISMISSED in part**.

However, as to Plaintiff's claims regarding his flood book of business, Plaintiff has successfully pleaded fraud for the same reasons as discussed regarding his LUTPA claim. In short, a communication stating that Plaintiff could no longer work on Allstate policies would be true, but a communication stating that Plaintiff could no longer service non-Allstate FAIR plan and flood policies would be false. Therefore, Plaintiff's fraud claim as to his flood book survives the motion to dismiss.

### V. COUNT 5: TORTIOUS INTERFERENCE WITH CONTRACT

Plaintiff's claim for tortious interference with contract must also be dismissed. First, Louisiana courts and federal courts applying Louisiana law have made clear that claims for tortious interference with contract cannot be maintained against corporate defendants. The Louisiana Supreme Court recognized a narrow cause of action of tortious interference with contract in *9 to 5 Fashions, Inc. v. Spurney*. 538 So. 2d 228, 228 (La. 1989). The court in *Spurney* held that the claim could be maintained against a corporate officer if a plaintiff had a contract or legally protected interest with the officer's corporation, the officer knew of the contract, and the officer intentionally and without justification caused the corporation to breach the contract and damage the plaintiff. *Id.* at 234. But Louisiana courts have not expanded the limited scope of *Spurney* to other situations, *see Petrohawk Properties, L.P. v. Chesapeake La., L.P.*, 689 F.3d 380, 395 (5th Cir. 2012) (collecting cases), and have continually held that there can be no claim for tortious interference with contract against a corporate entity itself. *See, e.g., Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F. Supp. 2d 521, 536 (E.D. La. 2007) (holding that tortious interference with contract "cannot be maintained against a corporate entity defendant") (citing *Tech. Control Sys., Inc. v. Green*, 809 So. 2d 1204, 1207 (La. App. 3 Cir. 2002) ); Bou*dreaux v. OS Restaurant Servs., LLC*, 58 F. Supp. 3d 634, 638-39 (E.D. La. 2014) (dismissing tortious interference with contract claim against corporate defendant). In light of this precedent, Plaintiff cannot assert his claim against Allstate directly, because it is a corporate entity. *Restivo*, 483 F. Supp. 2d at 536. Therefore, Count 5 is **DISMISSED**.

## VI. COUNT 6: DETRIMENTAL RELIANCE

Plaintiff claims that he "relied to his detriment, upon the express promises of Allstate, that they would timely consider in good faith and approve an objectively qualified buyer to purchase his book of business" and that such reliance was reasonable based on "the express provisions of the Agreement, Allstate's pattern in practice in approves [sic] other sales, and oral representations by Allstate, Heggem, and Caminita." (Rec. Doc. 21, ¶¶ 98, 99). Plaintiff further alleges that he "relied, to his detriment, upon the express promises of Caminita . . . that Allstate would extend his contract to allow time to find a buyer." *Id.* ¶ 98(a).

Detrimental reliance consists of three elements: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. *Suire v. Lafayette City-Par. Consol. Gov't*, 904 So. 2d 37, 59 (La. 4/12/05). Allstate argues that Plaintiff's detrimental reliance claim against it fails because Plaintiff's reliance was not reasonable. Allstate argues that any reliance based on extra-contractual promises is unreasonable as a matter of law when the contract is unambiguous and contains an integration clause. (Rec. Doc. 24-3, at 17). Allstate relies on *Drs. Bethea, Moustoukas and Weaver, LLC v. St. Paul Guardian Ins. Co.*, in which the Fifth Circuit held that doctors were not reasonable in relying on brochures sent out by their malpractice insurer promising free, unconditional extensions of their coverage when their policy agreement provided specific terms concerning the expiration of their existing policies. *376 F.3d 399, 403 (5th Cir. 2004)*. The Fifth Circuit found that reliance was unreasonable because the brochures were

too casual and the policies too clear, especially in light of the integration clause. *Id.* at 405.

Plaintiff argues that reliance on the promise to extend the contract by ninety days was reasonable because Allstate was granted broad discretion in the EA Agreement and because Allstate routinely granted similar extensions to other agents. (Rec. Doc. 30, at 16, 17). However, the EA Agreement supplies that at cannot be modified except by written agreement. (Rec. Doc. 24-3, at 17). Therefore, it would be unreasonable as a matter of law for Plaintiff to rely on any oral representation that he would receive a 90 day extension. Thus, Count 6 is **DISMISSED**.

### COUNT 7: UNJUST ENRICHMENT

As to Plaintiff's claim for unjust enrichment, this Court has largely already addressed these claims in its order denying remand. (Rec. Doc. 19, at 10, 11). As this Court previously recognized, Louisiana law bars a claim for unjust enrichment when that claim is based on a relationship that arises from an enforceable contract like the EA Agreement in this case. (Rec. Doc. 19, at 11). Therefore, Count 7 is **DISMISSED**.

Plaintiff's amended complaint fails to state a claim upon which relief can be granted as to Counts 2, 5, and 7. As to Count 1, Plaintiff's claims fail except for the claim pertaining to his receipt of termination payments. As to Counts 3 and 4, Plaintiff has successfully pleaded a claim as to his FAIR plan and flood book of business only. The portions of Counts 3 and 4 dealing with his Allstate book of business do not state a claim upon which relief can be granted.

## **<u>CONCLUSION</u>**

**IT IS HEREBY ORDERED** that Allstate's *Motion to Dismiss* **(Rec. Doc.**

**24)** is **GRANTED in part** and **DENIED in part.**

**IT IS FURTHER ORDERED** that Allstate's *Motion to Dismiss* **(Rec. Doc.**

**15)** is **DENIED as moot**.

New Orleans, Louisiana, this 25th day of October, 2022.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE