UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IRSHAD DANIEL RAHMAN, D/B/A           CIVIL ACTION
RAHMAN INSURANCE, D/B/A
INSURE FOR LESS, AND D/B/A
BUDGET INSURANCE

VERSUS                                No. 22-2052

ALLSTATE INSURANCE                    SECTION: "J"(2)
COMPANY, ET AL.

### ORDER & REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 99)** filed by Defendant, Allstate Insurance Company ("Allstate"). Plaintiff, Irshad Daniel Rahman, d/b/a Rahman Insurance, d/b/a Insure for Less, and d/b/a Budget Insurance has filed an opposition (Rec. Doc. 112) to which Allstate replied (Rec. Doc. 120). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that Defendant, Allstate's *Motion for Summary Judgment* **(Rec. Doc. 112) should be GRANTED**.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff was an insurance agent operating as an independent contractor with Allstate until Allstate terminated his Exclusive Agency Agreement ("the EA Agreement") on March 25, 2021, effective June 30, 2021. Plaintiff alleged that his contract was terminated without just cause and that Allstate improperly transferred Plaintiff's economic interest in his Allstate book of business to local Allstate agent, Tim Buckley. Allstate refused to even consider in good faith, Plaintiff claimed, two

1

objectively qualified potential buyers of Plaintiff's book of business. The Court previously dismissed these claims, as well as claims for conversion, tortious interference with contract, detrimental reliance, and unjust enrichment on October 25, 2022. (Rec. Doc. 53).

After this Court's order granting a partial dismissal of Plaintiff's claims, three counts remained. In Count 1, Plaintiff claims that Allstate breached the EA Agreement by failing to timely pay Plaintiff's termination payment. In Counts 3 and 4, Plaintiff claims that Allstate violated the Louisiana Unfair Trade Practices Act ("LUTPA") and committed fraud by allegedly misrepresenting to Plaintiff that he could no longer manage his flood book of business and misrepresenting to Plaintiff's customers that he could no longer service their flood and FAIR plan policies. Plaintiff alleges that because of Allstate's actions and misrepresentations, he was unable to retain his flood book and was forced to sell it for far below market value. Allstate has now moved for summary judgment on these remaining claims.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."

*Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

**DISCUSSION**

**I.   COUNT 1: BREACH OF CONTRACT AS TO TERMINATION PAYMENTS**

Plaintiff's first remaining claim is that Allstate breached the EA Agreement by failing to pay the termination payment owed to him. However, in his opposition to Allstate's motion for summary judgment, Plaintiff does not contest that he has received the termination payments and states that he does not oppose dismissal of this claim. Therefore, summary judgment is **GRANTED** as to Count 1.

**II.   COUNTS 3 AND 4: UNFAIR TRADE PRACTICES AND FRAUD**

Plaintiff's final remaining claims are that Allstate committed fraud and engaged in unfair trade practices when it allegedly misrepresented to Plaintiff that he could not manage his flood book of business after his termination and sent written communications to customers that Plaintiff could no longer service their flood and FAIR plan policies. The Louisiana Unfair Trade Practices Act ("LUTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A). It affords a private right of action to "[a]ny person who suffers any ascertainable loss" as a result of the unlawful conduct. § 51:1409(A). "To recover, the plaintiff must prove some element of fraud, misrepresentation, deception or other unethical conduct." *IberiaBank v. Broussard*, 907 F.3d 826, 839 (5th Cir. 2018) (internal quotation marks and citations omitted). A practice is unfair under LUTPA only when "the practice offends established public policy and is immoral, unethical, oppressive or unscrupulous." *Id.* (internal quotations omitted); *see also Monroe v. McDaniel*, 207 So.3d 1172, 1180 (La.

App. 5 Cir. 2016) ("[T]he range of prohibited practices under LUTPA is extremely narrow and includes 'only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct.'" (quoting *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1060 (La. 2010))). "What constitutes an unfair trade practice is determined by the courts on a case-by-case basis." *IberiaBank*, 907 F.3d at 839

As to Plaintiff's claim that Allstate misrepresented to him that he could no longer manage his flood book of business following his termination, Allstate argues that Plaintiff cannot show that Allstate offended established public policy because he "has not identified a single misrepresentation" made to him. Allstate argues that it was merely following the policies set forth in the EA manual regarding former agents' flood books. (Rec. Doc. 99, at 14). The EA Manual lays out three options for a terminated agent to dispose of his or her flood book of business: a terminated agent may (1) sell the flood book to another Allstate agent, (2) rewrite the flood customers directly with the National Flood Insurance Program, or (3) if the agent becomes employed with another insurance carrier, seek to write the flood customers with a policy serviced by that new carrier. (EA Manual, Rec. Doc. 99-4, at 11).

Plaintiff does not dispute that he had access to this policy, nor does he assert that Allstate ever lied to him about his ability to choose between these three options for his flood book. However, Plaintiff claims that Allstate represented to him that if he did not pick one of these options within thirty days, a deadline which does not appear in any of Allstate's written policies, his flood book would be reassigned to a

5

new Allstate agent for servicing, forcing him to sell these policies at far below market value. (Rec. Doc. 21, ¶¶ 42, 45). Plaintiff asserts that "it is undisputed that the written agreement between Allstate and Mr. Rahman mandates no deadline within which Mr. Rahman must sell his flood book of business following his termination." Plaintiff is correct that neither the flood offboarding checklist nor the EA Manual specifies a thirty-day timeline before an agent's flood book is transferred. However, Plaintiff is incorrect that no deadline exists. The flood offboarding checklist states that "Customers will be assigned to Ivantage Select Agency upon agency termination if a [Book of Business] Transfer Form has not been received." (Rec. Doc, 99-10, at 21). Therefore, the deadline in Allstate's documents is the date of termination which took effect approximately three months after Plaintiff was first notified of his termination. Plaintiff cannot argue that he was not on notice that his flood book would be transferred upon his termination unless he selected one of the three options provided to him in the EA Manual and flood offboarding checklist. Plaintiff has provided no evidence beyond his own testimony that Allstate told him he would only have thirty days from his termination date to sell his flood book, and in fact, if Plaintiff was so instructed, these thirty days would constitute a grace period beyond the deadline specified in the Allstate documentation provided to him which stated the transfer would take place upon his termination.

      Furthermore, although the Supplement to the EA Agreement does provide that "unless sold, the agent maintains a commission interest in agency bound Flood policies produced until the first policy renewal after the agent's termination date"

6

this does not provide any sort of guarantee that a terminated agent retains the right to *manage* these policies. Allstate cannot simply allow policies to go un-serviced indefinitely while a terminated agent decides what to do with his or her flood book. These policies must be transferred in order to properly protect customer interests.

Plaintiff chose to sell his flood book of business rather than transfer or rewrite these policies, and by doing so, Plaintiff voluntarily gave up his commission interest in his flood book. Although Plaintiff may be unhappy with his compensation for these policies, he cannot point to any instances of Allstate or any of its agents lying to him about his options regarding his flood book. In fact, in the sole exhibit provided by Plaintiff evidencing a communication between himself and Allstate, the Allstate representative Doug Caminita provided a screenshot to Plaintiff of the official flood offboarding checklist. Therefore, the Court cannot find any evidence of fraudulent or unfair dealings with regards to communications between Plaintiff and Allstate.

As to Plaintiff's claim that Allstate told customers that Plaintiff could no longer service their flood and FAIR plan policies, Plaintiff has been unable to produce a single written communication containing false information sent to Plaintiff's flood or FAIR plan customers. Plaintiff attempts to expand the scope of his remaining claims to include oral as well as written communications by citing paragraph 49(a) of his Amended Complaint which states that Tim Buckley, Inc. and/or Tim Buckley "directed oral communications to Plaintiff's customers encouraging them to change agents." (Rec. Doc. 21, at 13). However, the portions of the Amended Complaint pertaining to claims against Tim Buckley and Tim Buckley, Inc. were explicitly

7

stricken from the record by this Court on October 19, 2022. (Rec. Doc. 52). Therefore, Plaintiff's allegations regarding oral communications are no longer a part of this lawsuit. Plaintiff might have amended his complaint to raise allegations concerning oral communications about his flood or FAIR plan books of business. However, Plaintiff did not do so. Therefore, Plaintiff must rely on his sole example of a written communication to support this claim: a form email which would be automatically sent to anyone who tried to contact Plaintiff at his Allstate email address which read

> Thank you for choosing Allstate to help with your insurance needs. Please note, I am no longer with Allstate, but Allstate is still here for you. Making sure your needs are handled in a timely manner is very important to me, so please send your request to TIM BUCKLEY, at A0A6725@ALLSTATE.COM or 1 (504) 464-3533. It is my pleasure serving you and you will continue to be in good hands with Allstate.

(Rec. Doc. 112-23). There are no falsehoods in this form email. Plaintiff was no longer active with Allstate, and a customer attempting to reach him through his Allstate email needed to be informed of that fact. Additionally, Allstate points out that Plaintiff was informed that Allstate would create an out-of-office reply to be sent automatically from his email upon his termination, a fact which Mr. Rahman acknowledged in his deposition. (Rec. Doc. 99-5, at 23); (Rec. Doc. 99-1, at 114).

A viable LUTPA claim requires "egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct." *Monroe*, 207 So.3d at 1180. The Court cannot find that Allstate committed such a violation when all it did was follow its written policies which had been provided to Plaintiff well in advance of his termination and correctly informed customers that Mr. Rahman was no longer with the agency. For the same reasons that the LUTPA claim fails, this Court cannot find

that Allstate committed fraud in its dealings with Plaintiff. Therefore, summary judgment is **GRANTED** as to Claims 3 and 4 of Plaintiff's amended complaint.

## CONCLUSION

**IT IS HEREBY ORDERED** that Allstate's *Motion for Summary Judgment* **(Rec. Doc. 99)** is **GRANTED.**

New Orleans, Louisiana, this 14th day of November, 2023.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE